Per Curiam.
 

 The facts agreed in this case in substance are, that a grant issued for the land in dispute to John Elliot, dated the 18th of May, 1789; that he was killed by the Indians on the 12th of May, 1789, leaving George S. Elliot, his only son and heir at law, who, in January, 1816, sold and conveyed the same land to Patrick Darby, the lessor of the plaintiff. In January, 1790, administration of the estate of John Elliot, deceased, was granted by the Court of Pleas and Quarter Sessions for the county of Tennessee where he resided at the time of his death, to George Oldham and Daniel Johnston, who gave bond and sureties as the law directs, and entered * on their administration. James Elliot instituted an action against the administrators. At the return term the administrators pleaded that they had fully administered. At July term, 1791, the jury found for the plaintiff, and assessed his damages to £163 16s. At the April term of this court, the letters of administration granted to Oldham and Johnson were duly repealed, and administration was granted to Tilpha Elliot, the widow of the deceased, who took on herself the administration ; and at the same term the court appointed her guardian to her infant son, George S. Elliot, and daughter, Tilpha Elliot. She gave bond and sureties, and entered on her said guardianship. Shortly after her appointment as administratrix, Robert Nelson instituted an action against her; she pleaded fully administered, and covenants performed. In
 
 *466
 
 October, 1791, a jury found for the plaintiff ¿£41 12s. In April, 1792, the court ordered that George Neville he appointed guardian to George S. Elliot, for the special purpose of receiving service of two
 
 scire facias’s,
 
 one at the instance of James Elliot, the other at the instance of Robert Nelson against George S. Elliot, as heir at law of John Elliot, deceased, to show cause, if any he had, why execution should not be had of the real estate of the deceased in his hands, and that he be vested with full power to defend the same.
 
 Scire facias’s
 
 were issued and were made known, and judgments entered thereon in April term, in the year 1793. The court ordered that two tracts of land be condemned for the use of James Elliot and Robert Nelson, and that wilts of
 
 fieri facias
 
 issue to
 
 sell
 
 said tracts of land. At July term, 1793, the following order was made : “ George Neville, Esquire, guardian to George S. Elliot, comes into court and prays an order of sale for two tracts of land lying in Sumner County, to discharge debts hanging over said estate; 320 acres on Station Camp, and 640 acres on * Cedar Lick, which is granted ; and ordered that the clerk issue an order to the sheriff of Sumner County for that purpose.” At October ■term, 1793, which was after the sale hereinafter mentioned, it was •ordered that execution issue against the real estate of John Elliot, deceased, to satisfy the remaining part of three judgments, recovered "by James Elliot, Robert Weakly, and Robert Nelson against the heirs of John Elliot, deceased. The clerk issued the order of July, 1793, to the sheriff of Sumner County, directing him to sell said tracts of land, by virtue of which order the sheriff of Sumner County did sell both tracts on the -- day of September, 1793; that Robert Nelson was the highest bidder, and purchased the land now in controversy; andón the 24th of October, 1793, George Neville, as special guardian, made and executed a deed of conveyance to Robert Nelson for the said tract of land. The defendants claim by a regular chain of conveyances from Robert Nelson, and are in possession. The grant and all the deeds on both sides are admitted to be duly registered. Tilpha Elliot, who was appointed guardian to George S. Elliot,” was living in the county of Tennessee, and acting as guardian at the time George Neville was appointed special guardian, and when these proceedings took place ; she never was removed from her guardianship by any order of court, but continued to act as such till George S. Elliot attained the age of 21 years, which was in the year 1809.
 

 
 *467
 
 These are the material facts upon which the judgment of the court is to he founded. And the question upon them is not as to the powers of a Court of Pleas and Quarter Sessions to appoint guardians ; nor as to the powers of a court in which a cause is depending, to appoint a guardian
 
 ad litem,
 
 for they may do so if the standingguardian be so circumstanced that he cannot defend the ward; nor as to the continuance of his powers, for they determine at the end of the suit in * which he is appointed; . but the question is as to his right to apply to the County Court for a sale of the ward’s inheritance under the act of 1789, ch. 39, § 5. Certainly, with respect to a guardian
 
 ad litem,
 
 he ought not to be admitted where there is a standing guardian who can act; 'for the latter is selected by the County Court, who are well acquainted with the persons from whom the selections are to be
 
 made;
 
 whereas the court in which a suit may be depending, at a great distance, perhaps, from the residence of the ward, have no knowledge at all of the person best qualified. The guardian
 
 ad litem
 
 considers himself appointed
 
 pro forma,
 
 and is not informed, as the standing guardian is, either of the circumstances of the demand, or of the assets in the hands of the administrator, or of those in the hands of the standing guardian. It is impossible that he can defend for the minor with the same advantages that the standing guardian can. His duties to the ward are not fastened upon him by bond and sureties and oath, as those of the other guardian are; nor can he be so readily convicted of inattention and carelessness, in neglecting or misconducting the defense committed to his charge. It was well said by Judge Moore, in 2 Haywood, 74, let the bar take notice that guardians
 
 ad litem
 
 shall not, for the future, be strangers appointed by the court in which a suit depends. If the suit be misconducted, what remedy has the minor against the stranger appointed to be his defender ? No bond, or sureties, or responsible estate has he out of which satisfaction can come to make whole the injured ward. In general, such persons are appointed guardians by the County Court as are of kin to the minor, and are influenced either by their family pride or expectation of future succession, to prevent the diminution of the ward’s estate by unjust exactions. All these advantages are thrown away by the appointment of a guardian
 
 ad litem.
 
 He ought never to be appointed but in cases of * extreme necessity. It can only be said of him,
 
 *468
 
 that he is perhaps better than no guardian at all, and indeed oftentimes that sentiment would be very problematical. But when we proceed further still, and ask the question, shall the court listen to a stranger applying in place of the guardian for the sale of the ward’s estate, we must look at the act of 1789, ch. 89, § 5, in these words : “ That when any guardian shall have notice of any debt or demand against the estate of his or her ward, he or she may apply to the County Court where such guardianship was granted, for an order to sell so much of the personal or real estate of such ward as may be sufficient to discharge such debt or demand, and such order of the court shall particularly specify what property may be sold, and such property shall be sold on the same credit, and under the same regulations as property sold by executors or administrators is or may be by law. And the proceeds of such sales shall be considered as assets in the hands of the guardian, for the benefit of creditors, in like manner as assets in the hands of an administrator or executor, after
 
 sci.
 
 fa., as by the act directed. And the same proceedings may be had against.such guardian, with respect to the assets aforesaid, as might be had or taken against an executor or administrator in similar cases, provided, nevertheless, that no execution shall be levied on the goods or chattels, lands or tenements of any minor, in the hands of his guardian, until twelve months after judgment obtained on the
 
 scire facias
 
 aforesaid, nor shall execution issue, liable as aforesaid, at any time, but on motion in open court.” What shall we say: that the application is as well when it comes from a stranger as the guardian ? Why apply to the County Court ? Because they are presumed to know somewhat of the circumstances of the estate, at least to possess the means of obtaining correct information concerning it. Why is the application to come from the guardian ? He is acquainted with the ward’s estate, * both real and personal, has given an inventory of it, and knows how far it has increased or diminished since his appointment. He knows the probability of a recovery or not, for he has been led to converse and inquire upon that subject, by means of the character he has sometime sustained. He also is liable for any unnecessary sale, caused by an useless application to the court. He knows the value of the assets in the hands of the administrator, and can come to an exact conclusion with respect to the existing necessity for a sale or not. For these
 
 *469
 
 and other considerations, the law directs the application to come from him. Besides this, the money is to be received by him, and to be disposed of in a course of legal administration. How can the guardian
 
 ad litem
 
 do this, having no knowledge of any demand against the estate except that he is appointed to contest ? Every benefit contemplated by the law is lost by appointing a stranger to sell. If he is to receive the money, how is a creditor to he satisfied ? He may still proceed against the lawful guardian, and compel another sale of some other part of the real estate.' How is the creditor to obtain judgment against the stranger ? How is the lawful guardian to get out of his hands the money that is in them ? How is that money to be considered as assets in the hands of the lawful guardian ? He may say, I have no assets, they áre in the hands of this stranger, taken from- me by the officers of the law, and placed in his hands. Will not that he a defense for him ? What shall become of the surplus ? And if the stranger he unable to refund, whose loss shall it be ? In case of a lawful guardian, those who appointed are liable, if no security or insufficient security he taken. But here, by means of a new appointment under this act, everybody is safe from liability, and none suffers hut the innocent minor. The County Court have no power to make any such order but upon application of the appointed guardian; and to be executed * by him alone, standing encircled by all his responsibilities, none of them furnished with excuses by the interposition of a stranger.
 

 The order in this case was wholly void, and consequently the sale under it, with all it consequents. Vide 3 Ba. Ab. “ Guardian,” D, on notes; 2 Hay. 74; 2 C. D. “ Chancery,” 303, 304; 3 Burr. 436.
 

 Reverse the' judgment of the Circuit Court, and remand the cause to that court to be tried
 
 de novo.
 

 See Code, 2516-19; King’s Digest, 7089, 7090.